[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT #110
The plaintiff's three-count complaint alleges the following facts: Douglas was hired by the Board of Trustees for a one-year contract as a non-tenured, full-time Assistant Professor of Finance at Central Connecticut State University. On June 23, 1993, the Board offered Douglas an additional one-year term as a non-tenured full-time Assistant Professor. He accepted the CT Page 4480 one-year contract, which began on August 23, 1993 and ended on May 31, 1994.
During the fall of 1992, the Board conducted a national search for an Assistant Professor of Finance in a tenure track position. Douglas applied for this post but learned in May of 1993 that the Board had offered the position to a male applicant in his twenties. The Board discontinued its search after the applicant turned down the position.
In 1993, the Board re-initiated its search for an Assistant Professor of Finance and began a search for a Chairperson of the Finance and Law Department. Douglas applied for both positions. The Board offered the Assistant Professor of Finance position to a female applicant under the age of forty, and Douglas maintains that he was not offered that position because of his age. Although Douglas ranked sixth out of the seven finalists for the Chairperson position, and although the first five finalists declined the job, the Board did not offer him the position. The Board then conducted an internal search of tenured professors to fill the position' selecting three professors from the Finance and Law Department as candidates. From this list, the Dean of the School of Business selected Mary Cutler for the position. Douglas asserts that the University hired Ms. Cutler because she was younger than he and that the new internal search disqualified him as an applicant because it excluded nontenured applicants. Once his employment contract lapsed at the end of May, 1994, Douglas was not rehired by the University.
Douglas then brought this action. In Count One, he claims that the Board refused to comply with the Affirmative Action Plan and refused to hire him because of his age in violation of the Connecticut Fair Employment Practices Act. In Count Two, he alleges a wrongful refusal to hire under article I, §§ 10 14 of the Connecticut constitution based on the contention that the Board declined to hire because he had previously brought litigation against his former employers. In the Third Count, Douglas has asserted a violation of Connecticut General Statutes § 31-51q, which prohibits an employer from discharging or disciplining a plaintiff because he exercised his rights under the first amendment to the United States constitution or section 3, 4 or 14 of article first to the Connecticut constitution. Douglas contends that he suffered lost wages and benefits, emotional distress, anxiety, embarrassment, humiliation, anguish, undue stress and loss of self-esteem as a result of the Boards CT Page 4481 conduct.
The Board moved for summary judgment as to Counts Two and Three of Douglas's complaint. In his memorandum of law, the plaintiff conceded the second count and agreed to withdraw it.
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). The "summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 375, 260 A.2d 596 (1969).
In this case, however, the Board is essentially using its motion for summary judgment to challenge the legal sufficiency of Douglas's § 31-51q claim. Connecticut courts have allowed the use of a motion for summary judgment to test the legal sufficiency of a plaintiffs complaint, even though a motion to strike is the more appropriate vehicle for challenging the legal sufficiency of a claim. See Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409,279 A.2d 540 (1971); Jewett v. General Dynamics Corp. , Superior Court, judicial district of New London at New London, Docket No. 530943 (May 1, 1997). "However, the motion should only be granted if it meets the standard for a motion for summary judgment, not for a motion to strike." (Internal quotation marks omitted.)Kalwat v. Arnow, Superior Court, judicial district of Stamford at Stamford, Docket No. 132773 (February 6, 1996).
Douglas argues that "[w]ith the refusal to offer [him] the position which the [Board] had previously judged him to be competent to qualify as the next finalist, the natural expiration of his one-year appointment at the end of the 1993-94 academic year acted as an effective discharge of [his] . . . employment." Douglas is using these allegations to support a claim of constructive discharge under General Statutes § 31-51q.,[1]
General Statutes § 31-51q holds an employer liable for discipline or discharge of an employee because that employee exercised certain constitutional rights. General Statutes §31-51q[2] In viewing the facts in the light most favorable to Douglas, the nonmoving party, it is apparent both that he was actually not discharged or disciplined and that he has failed to set forth the elements of a constructive discharge claim under General Statutes § 31-51q. CT Page 4482
"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual,intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." (Internal quotation marks omitted.) Brittell v. Department of Correction, 247 Conn. 148,178, 717 A.2d 1254 (1998). Additionally, a plaintiff must show "that the dismissal, in whatever form, occurred for reasons violating public policy." Morris v. Hartford Courant, Co.,200 Conn. 676, 679, 513 A.2d 66 (1986).
The concept of constructive discharge arose to balance the inequities faced by employees who quit because of intolerable working conditions. See, e.g., Brittell v. Department ofCorrection, supra, 247 Conn. 178. Constructive discharge allows a plaintiff to maintain his employment discrimination claim even though the plaintiff quit. See, e.g., Brittell v. Department ofCorrection, supra, 247 Conn. 178. In fact, the Connecticut Supreme Court has stated that "[n]ormally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for abusive discharge. . . . Through the use of constructive discharge, the law recognizes that an employee's `voluntary' resignation may be, in reality, a dismissal by an employer." (Emphasis added; internal quotation marks omitted.) Brittell v. Department of Correction, supra,247 Conn. 178. Thus, where an employee has been actually discharged or terminated by his employer, a claim of constructive discharge, by its definition, cannot apply.
In the present case, Douglas acknowledges that he did not quit involuntarily.In fact, Douglas alleges that the Board simply did not rehire him at the termination of his contract. The Board hired Douglas for a contract faculty position that extended from 1992 through the 1993 academic year. The Board then renewed Douglas's term for an additional academic year, beginning on August 23, 1993 and ending on May 31, 1994. This contract position was nontenured, and on May 31, 1994, at the expiration of his one-year, contract, Douglas' position terminated.
Douglas is now asserting that because the Board refused "to offer [him] the position which the [Board] had previously judged him to be competent to qualify as the next finalist, the natural expiration of his one-year [contract] . . . at the end of the 1993-94 academic year" constitutes a constructive discharge, but because Douglas never quit his employment, the facts presented do CT Page 4483 not fit the elements of constructive discharge. The defendant is therefore correct in its contention that Count III fails to state a claim upon which relief may be granted as a matter of law, and the defendant is therefore entitled to judgment as to that count.
The motion for summary judgment is therefore granted as to Count III, and will also be granted as to Count II, unless that count has already been withdrawn.
Jonathan E. Silbert, Judge